[See Case No. 14,144.]

## Case No. 14,144.

### TRASK et al. v. DUVALL.

[4 Wash. C. C. 181.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1821.

CONTRACTS—CONDITIONAL PROMISE—PROOF OF CONDITIONS PERFORMED—AFFREIGHTMENT—ASSIGNEE OF BILL OF LADING.

1. Promise by A, "that, upon the freight of certain goods shipped to B being adjusted with him by the plaintiffs, the owners of the vessel, he, A, would pay the freight, if B did not." Quære, if it is incumbent on the plaintiffs to prove that they gave due notice to A, of the adjustment of the freight with B, and his non-payment thereof.

[Cited in Bashford v. Shaw, 4 Ohio St. 267.

Cited in brief in Wead v. Marsh, 14 Vt. 82.]

2. The assignee of the bill of lading, who received the goods, is bound to pay the freight; unless the assignor is bound by charter party to pay it, or unless the assignee had bound himself by an express agreement to pay it as surety for the assignor.

This was an action to recover the freight due for the carriage of a parcel of hides, from Maldonado to Philadelphia, shipped at that port, and deliverable as per bills of lading to A. Curcier of Philadelphia, or to his assigns, he or they paying freight. The declaration contains two sets of counts. One upon a special promise made by the defendant to Mr. Von Lengerke, the agent of the plaintiffs [Trask & Davis], in the following terms: "As soon as you shall have adjusted the freight with A. Curcier, I will pay you, if he does not." 2. Upon the carriage and delivery of the said hides to the defendant, the assignee of the bills of lading. The promise stated in the first set of counts, was proved precisely as laid by the deposition of Mr. Von Lengerke; who also proved, that the freight had been adjusted with Mr. Curcier, and amounted to the sum of $1823.32, which has never been paid by him. On the part of the defendant, it was proved, by two witnesses, that they were present at two conversations between Von Lengerke and the defendant, the one prior to, and the other after the delivery of the hides, at both of which, the defendant refused to become se-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

curity for Curcier, or to guaranty the payment of the freight, and utterly denied his having ever entered into such engagement. The deposition of Von Lengerke states, that after having delivered to Curcier about one half of the hides, the plaintiffs became suspicious of his ability to pay the freight, and refused to make any further delivery, unless he would give security for the whole freight. That he proposed the defendant, and after many interviews between the agent and the defendant, at all of which the former repeats the determination of the plaintiffs not to deliver the residue of the cargo without security, the promise, as laid in the declaration, was made. That the residue of the cargo, which was fully sufficient to pay the whole freight, was delivered to a young man, in the service of the defendant, and that the defendant advertised the hides for sale. It was further proved by the defendant's books, and other evidence, that more than three-fourths of the cargo was shipped to foreign ports, or sold in this city by the defendant. In support of the second set of counts, the plaintiffs gave in evidence the bills of lading, with the following indorsement on each, "Deliver the within contents, to Duvall." Signed, A. Curcier. One of the assignments is without date; the other is dated the 24th of May, 1819. Also a list of securities assigned by Curcier to the defendant, (amongst which are the bills of lading above mentioned,) as security for a large sum of money due by the former to the latter, with a receipt at the bottom, signed by Curcier, and bearing date the 10th of January 1821, stating that the said securities had been that day restored to Curcier. The vessel arrived at this port the latter end of April, or early in May, 1819.
[See Case No. 14,143.]

J. Sergeant, for plaintiffs, contended, that as assignee of the bills of lading, although that fact was unknown to the plaintiffs, or their agent, at the time and the delivery of a part of the cargo to the defendant, he was bound to pay the whole freight; and that in fact there was sufficient evidence to show that the part delivered to Curcier was to him as agent of the defendant, who, by the assignment of the bills of lading, was the real owner of the whole. He cited, Lawes, Chart. Part. 303, 304; Cock v. Taylor, 13 East, 399; 2 Holt, Shipp. 163, 164; Bell v. Kymer, 1 Marsh. C. P. 146.
2. That the express promise was fully proved, as well as the adjustment of the freight with Curcier, and that he had not paid the same.

C. J. Ingersoll, for defendant, denied that the assignee of the bill of lading was bound to pay the freight. 2 Holt, Shipp. 133; Lawes, Chart. Part. 142; Wilson v. Kymer, 1 Maule & S. 157; Artaza v. Smallpiece, 1 Esp. 23; The Theresa Bonita, 4 C. Rob. Adm. [Am. Ed. 194] 236; Moorson v. Kymer, 2 Maule & S. 303, 2 Holt, Shipp. 167.

2. Upon the other count, he insisted, that there was no consideration for the promise. That the promise, if proved, was merely collateral; and that it was incumbent on the plaintiff to prove, not only that he had used due diligence to obtain payment of the freight from Curcier, but that he had given due notice of the adjustment and nonpayment of the freight by Curcier. [Russell v. Clarke] 7 Cranch [11 U. S.] 70; Philips v. Astling, 2 Taunt. 206; 19 Johns. 69.

WASHINGTON, Circuit Justice (charging jury). In support of the counts upon the special promise, it was necessary for the plaintiff to satisfy the jury (1) that the promise was made as it is laid in those counts; (2) that the freight was adjusted with Curcier; and (3) that Curcier has not paid it. The promise is proved by Von Lengerke, in the very words in which the declaration states it. In opposition to this proof, two witnesses have been examined, who speak of two conversations which occurred between Von Lengerke and the defendant, at which they were present, when the defendant refused to become responsible for the freight, and denied that he ever had come under any such engagement. If you are satisfied that these interviews, or either of them, refer to that which Von Lengerke speaks of when the promise was made, then the witnesses are in opposition to each other, and it will be for you to weigh the testimony, and to decide upon the credit of the respective witnesses. As to the last conversation spoken of by the defendant's witnesses, it is quite clear that that took place after the hides were delivered, and, consequently, it is in no respect inconsistent with the evidence of the plaintiffs' witness. It appears, from the deposition of Von Lengerke, that he called more than twice upon the defendant, in order to know if he would become security for the freight; and it is possible, at least, that the first conversation, alluded to by the defendant's witnesses, was not the same spoken of by Von Lengerke, when the promise was made. He says, that when the promise was made, he and the defendant were standing at the door; whereas the defendant's witnesses speak of a conversation which took place in the store in their presence. There are two circumstances which seem strongly to corroborate the evidence of Von Lengerke. The first is, that he had constantly assured the defendant that the residue of the cargo would not be delivered unless satisfactory security for the freight should be given; and the fact is, that it was delivered, and to the defendant. The other is, that it now appears that the defendant was in reality the owner of the hides, as assignee of the bills of lading; and it was therefore his interest to remove the scruples of the owners upon the subject of the freight, by agreeing to become security of Curcier, in order to obtain possession of the property. To prove that the amount of freight was ad-

justed between Von Lengerke and Curcier, and the same had not been paid, the evidence of Von Lengerke is relied upon, who states that he fixed the amount of freight with Curcier at $1823.32; that it was fixed by the bills of lading, and Curcier acknowledges that statement to be right. That Curcier, though repeatedly called upon for the freight, has not paid it, and that it still remains due.

It has, nevertheless, been objected by the defendant's counsel, that the plaintiffs are not entitled to a verdict upon these counts:

1. Because there was no consideration for the defendant's undertaking. The consideration was the delivery of the hides to Curcier, which was abundantly sufficient.

2. That due notice of the adjustment of the freight with Curcier, and non-payment by him, was not given to the defendant. That notice in a case like the present, where there is no evidence of the insolvency of the person for whom the guarantee was given, and more particularly, where the property was delivered to the surety, exceeding in value the amount of the sum stipulated to be paid, was necessary to be given, is by no means to be admitted, although it is not necessary in this case to decide that point. One thing is clear, and that is, that the cases cited by the defendant's counsel do not prove that notice in this case was necessary. Russell v. Clarke proceeded upon the ground, that the letter of credit was unlimited; and it was held, therefore, that the person to be charged should be duly notified of the advances made upon the faith of his guarantee, that he might put a stop to further advances if he thought proper. In the case from 2 Taunt. 206, the defendant, by his promise, placed himself in the shoes of the drawer of the bill of exchange, and was therefore entitled to notice of the dishonour of the bill. In the case from 19 Johns. 69, the guarantee was, that the note was good, and was collectable after due process of law. The defendant did not undertake that the note would, to any indefinite period, be good and collectable; and the court very correctly decided, that forbearing to sue for seventeen months, did not prove that it was not collectable after due process of law. If the jury should be of opinion that the evidence establishes the promise as laid, that the freight was adjusted with Curcier, and that he has not paid it, the plaintiffs are entitled to a verdict; and the jury need not trouble themselves with the counts upon the implied promise.

But as they may not be satisfied that all these points have been proved, it will be proper for the court to express an opinion upon the question which has been so earnestly debated at the bar; viz. whether the defendant was, under all the circumstances of this case, and independent of an express promise, bound to pay this freight? The facts on which the question rests are, that, previous to the delivery of any part of the hides, the bills of lading were indorsed by Curcier to the defendant. We infer this, not altogether from the date of the assignment affixed to one of the bills of lading, but from the terms of the assignments indorsed upon both of the bills, "to deliver the contents of the within bill to Duvall." One half of the hides was delivered to the defendant; and although the delivery of the other half was made to Curcier, it may nevertheless be fairly concluded that he received them as the agent of the defendant, who was constituted the owner of the whole by the assignment of the bills of lading; who advertised them for sale, and who, it is proved by his books and by the clerks, did, in fact, sell more than three-fourths of the whole quantity. We should have required no decided case upon the point to satisfy us that the assignee of a bill of lading, for a valuable consideration, who receives the property mentioned in it, is liable to the owner of the ship for the freight. This arises from the terms of the bill of lading, which contains an engagement by the master with the shipper, to deliver the goods to the consignee, or to his assigns, he or they paying freight for the same. The consignee is not bound to receive them; but if he does receive them, he makes himself a party to the contract, and the law raises a promise on his part to perform the condition upon which alone the delivery was to be made to him. The engagement of his assignee is precisely the same. The delivery is to be to him, he paying freight. The consignee is no more an original party to the contract than his assignee. Both are named, and the terms upon which the delivery is to be made to either, are precisely the same. If, however, a doubt could exist as to the liability of the assignee, it is removed by the case of Cock v. Taylor, 13 East, 399. In the case of Moorson v. Kymer, the assignee of the bill of lading was held not to be liable upon an implied promise to pay the freight, because, by the charter party, the charterer had bound himself to pay it by an express agreement under seal.

This case is somewhat different from Cock v. Taylor, or any of the cases which were cited at the bar. Here there was an express promise by the defendant, if you should think that fact proved, to pay the freight, not absolutely as owner, but conditionally if Curcier did not, and as surety for him; and, in fact, the delivery was to the defendant, not as the assignee of the bills of lading, but as the agent and surety of Curcier, the supposed owner. I am not prepared to say that, under such circumstances, the law would raise an implied promise by the defendant to pay the freight. I am induced to think it would not, and shall for the present so decide, in order that the defendant may have an opportunity, if it should become necessary, of bringing the point again before the court, upon a motion for a new trial, when it may be more deliberately argued at the bar, and considered by the court. The ground of our pres-

ent opinion is, that where there is an express promise to pay freight, there is no ground for implying one; particularly where the two kinds of promise are altogether different from each other, as in this case, and where the delivery was made upon the faith of the express promise. If, however, the express promise is proved to your satisfaction, your attention need not be drawn to the other point; unless you should be of opinion that the conditions upon which the defendant agreed to guaranty the freight were not complied with by the plaintiffs.

Verdict for plaintiffs for the whole freight and interest.